# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**JOSEPH SUNDERMEYER,**
          **Petitioner,**

    **v.**                                                **Case No. 14-C-0843**

**REED RICHARDSON, Warden,**
**Stanley Correctional Institution,**[1]
          **Respondent.**

## DECISION AND ORDER

Joseph Sundermeyer petitions for a writ of habeas corpus under 28 U.S.C. § 2254.

## I. BACKGROUND

After a jury trial in Milwaukee County Circuit Court, Joseph Sundermeyer was convicted of two crimes: burglary, and armed robbery by the use or threat of force. These convictions arose out of events that occurred on February 7 and 8, 2005. The court sentenced Sundermeyer to a total of 25 years of initial confinement and 10 years of extended supervision.

Sundermeyer appealed his conviction to the Wisconsin Court of Appeals, which affirmed. He then sought review by the Wisconsin Supreme Court, which was denied. During his direct appeal to these courts, Sundermeyer did not raise the issues he now pursues in his federal habeas petition. However, after the conclusion of his direct appeal, Sundermeyer, proceeding pro se, filed a motion for postconviction relief in the

---

[1] The petitioner informed the court that he has been transferred to Stanley Correctional Institution. I have amended the caption to reflect that the warden of that institution has been substituted as the respondent.

state trial court under Wis. Stat. § 974.06. In that motion, he raised the two claims that he now pursues in his federal petition. Both claims assert that Sundermeyer received ineffective assistance from his trial and postconviction attorneys. The claims of ineffective assistance are based on two general omissions by trial counsel: (1) his failure to challenge a warrant for a DNA sample, and (2) his failure to introduce at trial three categories of documentary evidence that, according to Sundermeyer, would have bolstered his defense. The claims involving postconviction counsel are based on that counsel's failure to raise trial counsel's ineffectiveness in these two respects as issues on appeal.[2] The trial court issued a series of written opinions, held a hearing under *State v. Machner*, 92 Wis. 2d 797 (Ct. App. 1979), and ultimately denied the postconviction motion. Sundermeyer appealed to the Wisconsin Court of Appeals. That court affirmed the order of the trial court in a written opinion. The facts described below are based on the facts as described by the trial court and Wisconsin Court of Appeals in their written opinions.

The victim of both the armed robbery and the burglary was Loretta Howard. At trial, she testified that, in 2003, while she was married to someone else, she began a romantic relationship with Sundermeyer. Howard testified that the romance ended in the summer of 2004, after which she and Sundermeyer remained friends.

---

[2] In Wisconsin, claims of ineffective assistance of trial counsel can be raised on direct appeal only if the defendant first raises the claim in the trial court in a postconviction motion. *See State ex rel. Rothering v. McCaughtry*, 205 Wis. 2d 675, 677–78 (Ct. App. 1996). The attorney who brings such a postconviction motion is usually referred to as "postconviction counsel." This attorney usually also represents the defendant on appeal, and at that point he or she is referred to as appellate counsel. *See id.* at 678–79.

Howard testified that, when she left work on February 7, 2005, she found Sundermeyer waiting for her near her car. He asked for a ride and Howard agreed. After Howard drove Sundermeyer to a house, Sundermeyer told her that he wanted to resume their romance. Howard rebuffed him. Sundermeyer became angry and began punching her in the face. He pulled out a knife and threatened to harm her. Eventually, Sundermeyer demanded that Howard go to an ATM, take out money, and give it to him. Howard complied. She then quickly drove to a gas station and demanded that Sundermeyer get out of the vehicle. He did, but on the way out of the car he grabbed Howard's cell phone. Sundermeyer left the knife in the car. Howard did not immediately report this incident to the police.

Howard testified that, the next morning, she began receiving phone calls from Sundermeyer while she was at work. Howard refused to answer the calls, but eventually one of her co-workers spoke to Sundermeyer. He told the co-worker that if Howard did not get on the phone, she would regret it, and also that he would "do something to her house." Later, Howard did take one of the calls, during which Sundermeyer told her that if she did not want to be with him, then whatever he did would be "on her."

Howard testified that sometime later that day her mother called her at work and told her to come home. When Howard got home she saw that her house had been extensively vandalized and that some of her property, including jewelry, was missing. Howard's mother contacted the police, and Sundermeyer was arrested. The police found some of Howard's missing property in Sundermeyer's possession.

At trial, Sundermeyer testified that he was innocent of both charges. He testified that, contrary to Howard's claim that she ended the romantic relationship in summer 2004, in fact the relationship lasted until February 3, 2005, when he decided to end it because Howard had been physically and verbally abusing him. Sundermeyer testified that he had been living in Howard's house until February 3, when he left and moved in with his mother.

Sundermeyer now contends that the conflict between his testimony and Howard's testimony over when their relationship ended presented an important credibility issue. If the jury thought Howard was lying when she testified that the relationship ended in the summer of 2004, then the jury might find her less credible overall. Moreover, if, at the time of the crimes, Sundermeyer had just recently ended his relationship with Howard, then the jury might think he had less of a motive to retaliate by robbing her and vandalizing her home.

At trial, trial counsel attempted to show that Howard's relationship with Sundermeyer lasted until early 2005, as Sundermeyer had claimed, and that Sundermeyer was living at her home until that time. While cross-examining Howard, he elicited testimony that Sundermeyer was in her home on January 19, 2005, when he let a furniture repairperson into the home to fix a sofa. Trial counsel also presented witnesses who testified about times they saw Howard and Sundermeyer together at the end of 2004 and early 2005. However, Sundermeyer now contends that his trial counsel rendered ineffective assistance by not presenting the jury with additional evidence that supported his testimony that the relationship lasted until early 2005.

4

Sundermeyer describes the additional evidence as falling into three categories. The first consists of records showing that Howard visited Sundermeyer numerous times between August 2004 and October 2004 while he was in jail at either the Milwaukee County House of Correction or the Community Correction Center. These records also show that Howard deposited money into Sundermeyer's inmate account in October and September 2004. The second category consists of records showing that Howard rented a motel room for two people in October 2004. Sundermeyer contends that he shared the room with Howard, but the motel receipt does not list Sundermeyer as a guest. The third category consists of telephone records and other records that, according to Sundermeyer, suggest that he was making calls from Howard's home between December 24, 2004 and February 3, 2005.

Besides arguing that trial counsel was ineffective in failing to use the three categories of evidence discussed above, Sundermeyer argues that trial counsel was ineffective in failing to challenge a search warrant allowing the state to obtain his DNA. This issue relates to the knife that the police recovered from Howard's car after the burglary, and which Howard claimed Sundermeyer used during the armed robbery. The detective investigating the robbery submitted the knife to the state crime lab for DNA testing. The lab retrieved DNA from the knife's handle and compared it to the DNA on file in the state's databank. This test did not identify Sundermeyer as a contributor to the DNA, but it revealed that several individuals had left their DNA on the knife. Using the state databank, the lab was able to identify one of those individuals as being a man named Larry Bauer. The lab stated that it found DNA from additional "minor"

5

contributors on the knife, but that no further interpretation of this data could be made without a "standard sample" (a tube of blood or a buccal swab) from a suspect.

After receiving the lab's initial report, the detective applied for a warrant to collect a DNA sample from Sundermeyer. In his affidavit in support of the warrant, the detective described the facts that led him to suspect Sundermeyer of being the perpetrator of the crime, namely, Howard's having identified Sundermeyer as the perpetrator. The detective then noted that the state crime lab had examined the knife for DNA evidence and found DNA from at least three individuals. The detective stated that the crime lab told him that a standard DNA sample from Sundermeyer could determine if he was one of the three individuals who contributed DNA to the knife.

Based on the detective's affidavit, a court commissioner issued a warrant for the collection of a DNA sample from Sundermeyer. The sample was obtained and submitted to the lab. This time, the lab returned a report identifying Sundermeyer as a minor contributor to the DNA found on the knife. The lab's findings were presented to the jury at trial.

Sundermeyer contends that the detective who applied for the warrant intentionally omitted facts that were relevant to the court commissioner's probable-cause determination. Specifically, Sundermeyer notes that the detective failed to mention that, at the time of the warrant application, Sundermeyer's DNA was already in the state's databank because he had a sample taken from him while he was a prison inmate in 2001. Sundermeyer contends that this was significant because the lab, during its initial examination of the knife, did not match the DNA on the knife to Sundermeyer's DNA in the databank. Sundermeyer contends that the lab's failure to match his DNA on

file to the DNA on the knife during the initial testing meant that the lab "had already excluded him as a possible [contributor]" to the DNA. *See* Br. in Supp. at 13, ECF No. 43. Thus, argues Sundermeyer, the detective should have informed the court commissioner that Sundermeyer already had DNA on file and that the state had failed to match that DNA to the DNA on the knife. He contends that his trial counsel rendered ineffective assistance in failing to request a hearing to challenge the warrant application under *Franks v. Delaware*, 438 U.S. 154 (1978) and related state-law cases, and that his postconviction counsel rendered ineffective assistance in not raising trial counsel's failure as an issue on appeal.

As noted, Sundermeyer first raised both the DNA issue and the issue relating to the additional evidence of his relationship with Howard in a postconviction motion filed in the state trial court. The trial court issued a written opinion in which it rejected Sundermeyer's DNA claim and his claim involving the first two categories of documents on the ground that they had no merit. However, the court found enough merit in Sundermeyer's claim involving the third category of documents—the phone and other records suggesting that Sundermeyer made calls from Howard's home phone in early 2005—to schedule a *Machner* hearing. At this hearing, both Sundermeyer's trial counsel and his postconviction counsel testified about their reasons for not using the records as part of Sundermeyer's defense. After the hearing, the trial court issued a written opinion in which it found that Sundermeyer's attorneys did not perform deficiently in failing to use the records. The court found that each attorney was aware of the records and made an objectively reasonable decision not to use them. The court therefore denied Sundermeyer's postconviction motion.

The Wisconsin Court of Appeals affirmed the trial court's order for substantially the same reasons as the trial court. The Wisconsin Supreme Court denied Sundermeyer's petition for review.

## II. DISCUSSION

The Wisconsin Court of Appeals addressed Sundermeyer's federal claims on the merits. Therefore, the standard of review of 28 U.S.C. § 2254(d) applies. Under that standard, I may grant relief only if the court's adjudication of a claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state-court proceeding.

Both of Sundermeyer's claims involve allegations that he received ineffective assistance from his trial and postconviction attorneys. To establish a claim of ineffective assistance of counsel, Sundermeyer must show that counsel performed deficiently and that he suffered prejudice as a result. *Strickland v. Washington*, 466 U.S. 668, 687–94 (1984). To establish deficient performance, Sundermeyer must demonstrate that counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional norms. *Id.* at 687. This requires showing that counsel made errors so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id.* To establish prejudice, Sundermeyer must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* at 694.

**A.      Failure to Challenge Warrant for DNA Sample**

Sundermeyer first contends that his lawyers performed deficiently in failing to challenge the warrant for his DNA sample. Under *Franks v. Delaware*, a defendant may challenge the truthfulness of the factual statements made in an affidavit for a search warrant. 438 U.S. 154, 155–56 (1978). The Wisconsin Supreme Court has held that a defendant may challenge not only affirmative misrepresentations, but also the omission of facts that are necessary for an impartial judge to fairly determine probable cause. *State v. Mann*, 123 Wis. 2d 375, 385–86 (1985).

Sundermeyer notes that the detective who applied for the search warrant for his DNA omitted from his affidavit the facts that (a) Sundermeyer already had DNA in the state databank, and (b) the lab's initial test of the knife did not reveal a match to his DNA on file. Sundermeyer contends that these facts were material to the probable-cause determination because they showed that he had already been "excluded" as a possible contributor to the DNA on the knife. The Wisconsin Court of Appeals addressed these contentions as follows:

> [W]e see no reason why the result of the warrant application would be any different had the police disclosed that Sundermeyer had previously provided a sample for the database. For whatever reason, the results of the testing on the handle were not matched to Sundermeyer's file sample, but the technician indicated she could use a new sample to conduct further analysis. Those facts would be the same regardless of whether anyone knew that Sundermeyer had a sample on file. Though Sundermeyer expresses a degree of incredulity that he "mysteriously went from not being a possible contributor to the three DNA profile[s] developed from the knife . . . to being a 'possible' [and] 'minor' contributor," such disbelief has no bearing on the admissibility of the test results.

Wis. Ct. App. Op. at 7–8, ECF No. 27-11. The court added in a footnote: "Sundermeyer apparently does not appreciate that the lack of an immediate match between the DNA collected and his profile of record does not necessarily indicate his exclusion as a

9

possible contributor." *Id.* at 8 n.7.  Ultimately, the court found that there was no basis for challenging the warrant under *Franks*, and that therefore neither trial counsel nor postconviction counsel was deficient in failing to raise the issue. *Id.* at 8.

Sundermeyer has not shown that the court of appeals rendered a decision that was contrary to, or involved an unreasonable application of, any Supreme Court case. Nor has he shown that the decision was based on an unreasonable determination of the facts in light of the evidence presented in state court. Instead, in federal court, Sundermeyer merely restates his belief that the initial failure to match the DNA on the knife to his DNA on file necessarily showed that he had already been excluded as a possible contributor. But Sundermeyer offers nothing to support his belief. The only part of the record he cites is the crime lab's initial report finding no match between the DNA on the knife and Sundermeyer's DNA in the database. *See* Sundermeyer's Br., Ex. D, ECF No. 43-5. This report does not state, or in any way imply, that the lack of an initial match meant that Sundermeyer had been excluded as a possible contributor to the DNA on the knife. Instead, the report states that the lab could not further interpret the DNA found on the knife unless an "appropriate standard" from the named suspect (i.e., Sundermeyer) was submitted. *Id.* Indeed, the report implies that the lab could not draw any firm conclusions at all about whose DNA was on the knife until it received a standard sample. Even with respect to Larry Bauer, whose DNA in the state databank was matched to the DNA on the knife, the lab stated that the match could only be considered an "investigative lead" until the match was confirmed by comparing the DNA on the knife to a "standard sample" from Larry Bauer. *Id.*

Based on the evidence presented in state court, it was reasonable for the Wisconsin Court of Appeals to conclude that the lack of an initial match between the DNA on the knife and Sundermeyer's DNA on file did not mean that Sundermeyer had already been excluded as a possible contributor to the DNA on the knife. Moreover, the court of appeals reasonably concluded that the results of the initial test were not material to the court commissioner's probable-cause determination, and that therefore there were no grounds for Sundermeyer's trial attorney to request a *Franks* hearing or for Sundermeyer's postconviction counsel to raise trial counsel's failure to request a *Franks* hearing as an issue on appeal. Accordingly, Sundermeyer is not entitled to relief on this claim.

**B.     Failure to Use Records**

Sundermeyer next contends that his trial lawyer performed deficiently in failing to use the three categories of records to corroborate his claim that he was romantically involved with Howard and living in her house until February 3, 2005, and that his postconviction counsel performed deficiently in failing to raise trial counsel's failure to use the records as an issue on appeal.

The first category of records consists of those showing that Howard had visited Sundermeyer in jail and deposited money into his inmate account on various dates in August, September, and October 2004. Sundermeyer points out that some of these visits and deposits occurred after the summer of 2004, which is when, according to Howard's testimony, the romantic relationship ended. Sundermeyer contends that trial counsel should have used these records to show that the romance lasted longer than Howard let on.

The trial court rejected Sundermeyer's ineffective-assistance claims involving these records in a written opinion it issued before it held the *Machner* hearing. *See* Order of March 9, 2011 at 4–6, ECF No. 27-8 at 62–64. The court reasoned that the jail visits and deposits, although consistent with a romantic relationship, were also consistent with friendship. The court noted that Howard testified at trial that she remained friends with Sundermeyer even after she ended the romantic part of their relationship, and that therefore the records were not necessarily inconsistent with her testimony. The court also noted that the visits and deposits occurred either during or not long after the summer of 2004, and that therefore even if they were suggestive of romance, they did not seriously conflict with Howard's testimony or support Sundermeyer's claim that the romance lasted all the way until February 3, 2005. For these reasons, the trial court found that the jail records would not have made a difference to the outcome of Sundermeyer's trial, and that therefore he could not have been prejudiced by his lawyers' failure to use them. *Id.* at 8. The Wisconsin Court of Appeals agreed with the trial court on these points. *See* Wis. Ct. App. Op. at 10 n.8. I do not see any way in which the state courts' resolution of this issue could be thought to be contrary to, or to involve an unreasonable application of, any Supreme Court case. Likewise, the state courts did not unreasonably determine the facts. Accordingly, Sundermeyer is not entitled to habeas relief based on any claim involving the jail records.

The second category of documents consists of records showing that Howard rented a motel room for two people in early October 2004. Sundermeyer contends that Howard rented this room so she could be with him, and that therefore it supports his

claim that the romance continued past the summer of 2004.  Sundermeyer contends that trial counsel should have used these records at trial to corroborate his side of the story, and that postconviction counsel should have made an issue over trial counsel's failure to do so on appeal.

As with the jail records, the trial court resolved Sundermeyer's claim involving the motel records in a written opinion it issued before holding the *Machner* hearing.  *See* Order of March 9, 2011 at 6, ECF No. 27-8 at 64.  It rejected the claim on the ground that the records did not identify the second person who stayed in the room with Howard, and thus did not support Sundermeyer's claim that he was this second person.  The trial court determined that Sundermeyer could not have been prejudiced by his lawyers' failure to use the motel records, as they clearly would not have made a difference to the outcome of his trial.  *Id.* at 8.  The court of appeals agreed with the trial court on these points.  *See* Wis. Ct. App. Op. at 10 n.8.  I do not see any way in which the state courts' resolution of this claim could be thought to be contrary to, or to involve an unreasonable application of, any Supreme Court case.  Likewise, the state courts did not unreasonably determine the facts.  Accordingly, Sundermeyer is not entitled to habeas relief based on any claim involving the motel records.

The final category of records consists of voluminous records that Sundermeyer has combed through in an effort to show that, between late December 2004 and early February 2005, he made a number of telephone calls from Howard's home.  Some of the records are logs of telephone calls made from Howard's home telephone number.  The other records are time records for Howard and her mother, showing that they were at work during the times when the calls were made.  Sundermeyer contends that

because Howard and her mother were at work when the calls were made, the jury could have inferred that the calls were made by him. Thus, Sundermeyer concludes, his trial counsel should have used these records to corroborate his claim that he lived at Howard's home until February 2005.

The trial court allowed Sundermeyer to pursue this claim at a *Machner* hearing. Both Sundermeyer's trial counsel and his postconviction counsel testified at the hearing. Trial counsel testified that he was aware of the records but decided not to present them at trial because he did not think they would be very helpful. Tr. of Oct. 7, 2011 Mot. Hearing at 30–31, ECF No. 27-29. Although trial counsel could not entirely recall why he thought the records would not be helpful, he testified that it was probably because the records did not reveal who made the calls. *Id.* at 31. He thought that Howard's children could have been at home making the calls, that Howard might have come home from work to make the calls, or that someone else would say that they were there making the calls. *Id.* at 31 & 57–58. Trial counsel also testified that he thought he had a better way to show that Sundermeyer was still living in the house in early 2005, which was to show that he was at the house in January 2005 to admit a furniture repairman. *Id.* at 58–59. Trial counsel had his investigator interview the furniture repairman and confirm that Sundermeyer was the one who let him in. *Id.* But at trial, Howard admitted on cross-examination that Sundermeyer let the repairman into the house, so trial counsel did not need to call the repairman as a witness.

Sundermeyer's postconviction counsel gave similar testimony at the *Machner* hearing. He testified that he was aware of the phone records but thought they would not have helped corroborate Sundermeyer's testimony or impeach Howard's testimony

because they did not show that Sundermeyer made the calls. *Id.* at 73–75. Postconviction counsel also thought that trial counsel had already undermined Howard's story to some extent by getting her to admit that Sundermeyer was at the house in January 2005 when the furniture repairman arrived, and that introducing the phone records from the same general time period would not have added much to the defense. *Id.* at 73–74.

In a written opinion it issued after the *Machner* hearing, the trial court found that neither trial counsel nor postconviction counsel performed deficiently in failing to use the phone and work-attendance records. Order of Feb. 27, 2012 at 6–11, ECF No. 27-8 at 91–96. The court found that both attorneys had made objectively reasonable decisions not to use the records, in that the records did not conclusively establish that Sundermeyer was the one who made the calls and trial counsel had made essentially the same point as Sundermeyer would have made with the records by getting Howard to admit that Sundermeyer was at her home in January 2005 to admit the furniture repairman. On appeal, the Wisconsin Court of Appeals agreed with the trial court's analysis. Wis. Ct. App. Op. at 10–13.

I do not see any way in which the state courts' resolution of the claim involving the phone and work-attendance records could be thought to be contrary to, or to involve an unreasonable application of, any Supreme Court case, or to be based on an unreasonable determination of the facts. The state courts reasonably concluded that trial and postconviction counsel made reasonable decisions not to use the records, given that the records did not conclusively establish who made the calls and trial counsel had made essentially the same point—that Sundermeyer was in Howard's

home in January 2005—using the repairman evidence. Accordingly, Sundermeyer is not entitled to relief on this claim.

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that Sundermeyer's petition for a writ of habeas corpus is **DENIED**. The Clerk of Court shall enter final judgment. Pursuant to Rule 11 of the Rules Governing § 2254 Cases, I find that the petitioner has not made the showing required by 28 U.S.C. § 2253(c)(2), and therefore I will not issue a certificate of appealability.

Dated at Milwaukee, Wisconsin, this 22nd day of February, 2018.

/s Lynn Adelman
LYNN ADELMAN
District Judge